# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| MARISEL RAMOS,<br>*Plaintiff,*<br><br>v.<br><br>NANCY A. BERRYHILL, ACTING<br>COMMISSIONER OF THE SOCIAL<br>SECURITY ADMINISTRATION,<br>*Defendant.* | No. 3:18-cv-1082 (VAB) |

## RULING ON MOTION TO REVERSE THE DECISION OF THE COMMISSIONER AND MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER

Marisel Ramos filed for Social Security disability insurance benefits under Title II of the Social Security Act, which Administrative Law Judge ("ALJ") Jason Mastrangelo denied. Social Security Transcripts by Social Security Administration, ECF No. 14 ("Tr."), at 22.

Ms. Ramos has now filed a motion to reverse the ALJ's disability determination. Motion to Reverse the Decision of the Commissioner, ECF No. 21 ("Mot. to Reverse").

In response, Nancy Berryhill, Acting Commissioner of the Social Security Administration ("Acting Commissioner"),[1] has moved for an order affirming the ALJ's decision. Motion to Affirm the Decision of the Commissioner, ECF No. 22 ("Mem. in Supp. of Mot. to Affirm").

---

[1] *See* Commissioner Bio, accessed Jul. 9, 2019, https://www.ssa.gov/agency/commissioner.html; Press Release, Social Security Administration, Social Security Welcomes its New Commissioner (Jun. 17, 2019), https://blog.ssa.gov/social-security-welcomes-its-new-commissioner/. Under Rule 25(d) of the Federal Rules of Civil Procedure, when a party in an official capacity resigns or otherwise ceases to hold office while the action is pending, the officer's successor is automatically substituted as a party, regardless of the party's failure to so move or to amend the case caption. Fed. R. Civ. P. 25(d). The Court also may also order the substitution of a party at any time. *See Williams v. Annucci*, 895 F.3d 180, 187 (2d Cir. 2018); *Tanvir v. Tanzin*, 894 F.3d 449, 459 n.7 (2d Cir. 2018). Accordingly, the Court directs the Clerk of the Court to amend the docket and case caption to reflect that Andrew M. Saul, Commissioner of the Social Security Administration, is now the named Defendant in this action.

For the following reasons, the Court **DENIES** the motion to reverse the Acting Commissioner's decision and **GRANTS** the motion to affirm the Acting Commissioner's decision.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Factual Background

#### 1.     Disability Allegations

On December 16, 2015, Ms. Ramos applied for Title II Social Security disability, alleging her injuries prevented her from working as of November 12, 2015. Application for Disability Insurance, Tr. at 156. In her application, Ms. Ramos listed osteoarthritis[2] in both ankles, heal spurs, fibromyalgia, [3] migraines, herniated/bulging disk in back, fatigue, and anxiety. Disability Report, Tr. at 181.

On January 24, 2016, Ms. Ramos submitted a daily activity report to the Commissioner. Activities of Daily Living, Tr. at 190. She reported taking her daughter to school and engaging in limited household chores because she does not want to over-exert herself due to fibromyalgia. *Id.* Because of the pain, Ms. Ramos attested that she was unable to stand, sit, or walk for extended periods, and she had trouble sleeping. *Id.* at 191. Ms. Ramos alleges that the pain had limited her to two household chores per day. *Id.* at 192. Ms. Ramos also attested that her conditions limited her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete task, use her hands, concentrate, and remember details. *Id.* at 194.

On March 25, 2016, the State of Connecticut Bureau of Rehabilitations Services

---

[2] "[T]he most common form of arthritis, usually occurring after middle age, marked by chronic breakdowns of cartilage in the joints leading to pain, stiffness, and swelling." RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 1370 (2d ed. 2001).
[3] "A syndrome of chronic pain of musculoskeletal origin but uncertain cause." *Green-Younger v. Barnhart*, 335 F.3d 99, 101 n. 1 (2d Cir. 2003) (citing STEDMAN'S MEDICAL DICTIONARY 671 (27th ed.2000)).

conducted a disability determination on Ms. Ramos. Disability Determination Exam, Tr. at 379.

Dr. Joseph Guarnaccia concluded that as a "42 year old woman with lower back pain,

fibromyalgia and other joint pain with limitations in the use of her arms and hands. She would

have difficulty performing physical work related to activities requiring walking, standing, sitting,

lifting, carrying [,] handling, [and] bending." *Id.* at 382.

On April 5, 2016, the Acting Commissioner determined that Ms. Ramos was not

disabled. Disability Determination Explanation, Tr. at 67. The Acting Commissioner determined

that Ms. Ramos had severe joint, fibromyalgia, spine, and migraine impairments. Tr. at 61. The

Acting Commissioner also concluded that Ms. Ramos could occasionally lift twenty pounds,

frequently lift ten pounds, stand or walk for six hours of an eight-hour workday, sit for six hours

in an eight-hour workday, and had unlimited use of her hands and feet to operate controls. *Id.*

at 63. The Acting Commissioner then concluded that Ms. Ramos could occasionally climb ramps

and stairs, balance, stoop, kneel, crouch, or crawl but should never climb ladders, ropes, or

scaffolds. *Id.* at 64. The Acting Commissioner next concluded that Ms. Ramos could work as a

laundry folder, weigher, and bagger garment. *Id.* at 67. The Acting Commissioner finally

determined that Ms. Ramos's "condition results in some limitations in [her] ability to perform

work related activities," but "that [her] condition is not severe enough to keep [her] from

working." *Id.*

On May 31, 2016, the Acting Commissioner denied Ms. Ramos's reconsideration for the

same reasons. Disability Determination for Reconsideration, Tr. at 70–82.

On June 15, 2016, Ms. Ramos then made a written request for a hearing. Request for

Hearing by Administrative Law Judge, Tr. at 107–08.

On March 22, 2017, Administrative Law Judge Mastrangelo held a hearing on Ms.

Ramos's disability claim. Hearing Transcript, Tr. at 28.

## 2. Ms. Ramos's Testimony

At the hearing, Ms. Ramos testified that she had not worked since November 2015. Hearing Transcript, Tr. at 33. Ms. Ramos testified that she was forty-three years old, had a twelve-year-old daughter, finished the eleventh grade, and had a Connecticut driver's license. *Id.* at 32–33. She also testified that she did not have any difficulty driving. *Id.* at 33. Ms. Ramos testified that she formerly worked as a bus driver and cleaner. *Id.* at 34–35. In those roles, Ms. Ramos testified that she did not have to lift or carry anything weighing more than fifteen pounds. *Id.* at 35.

Ms. Ramos also testified that she would be unable to work those jobs now because of back and leg injuries. *Id.* Specifically, she stopped working in her last job as a bus driver because she could not drive for hours on the bus. *Id.* at 45. In addition, Ms. Ramos testified that she would not be able to tolerate an eight-hour-per-day job because of pain—mostly in her joints, mainly in hands, knees, and neck, due to fibromyalgia. *Id.* at 36–37. Moreover, physical therapy and medication have not helped Ms. Ramos manage the pain, but she had never used a cane or walker to walk. *Id.* 37–38.

Ms. Ramos testified that her level of pain ranged, depending on the day, with the worst days resulting in her not leaving bed for up to two days. *Id.* at 41. Ms. Ramos testified that these days happen up to twice a month and last for a full day. *Id.* at 42. Ms. Ramos alleges that the pain prevents her from standing for more than a half hour, sitting for more than forty minutes, or lifting heavy objects. *Id.* at 45.

Ms. Ramos then testified that she had difficulty clothing herself, attends church three times per week, but often had issues with fatigue. *Id.* at 39.

Ms. Ramos also noted that she does not see a psychiatrist or therapist for her depression and anxiety. *Id.* at 46.

### 3. Vocational Expert Testimony

At the Ms. Ramos's disability hearing, Larry Takki, vocational counselor, testified as the Acting Commissioner's vocational expert. Hearing Transcript, Tr. at 46. Mr. Takki testified that someone with Ms. Ramos's current limitations would prohibit her from her past work as a bus driver. *Id.* at 47–48. Mr. Takki, however, testified that someone with Ms. Ramos's limitations would be able to work the following jobs: as a price marker, which had 469,000 jobs in the United States; as an electronics sub-assembler, which had 180,000 jobs in the United States; and as a table worker, which had 400,000 jobs in the United States. *Id.* at 48–49.

Mr. Takki also testified that if someone had an upper extremity fingering limitation with their dominant hand, that person would likely not be able to meet the industry standards for those professions. *Id.* at 49. When limited to light or sedentary work, Mr. Takki testified that there would be no jobs that could accommodate the extremity fingering limitation. *Id.* at 50.

If an individual would be unable to carry ten pounds occasionally, less than ten pounds frequently, and was unable to sit, stand, or walk eight hours in an eight-hour workday, then that individual, with any factor individually and collectively, would be precluded from all work. *Id.* at 50–51.

If someone was off task more than ten to fifteen percent of their time, then Mr. Takki testified that limitation would preclude all work. *Id.* at 51.

During cross-examination, Ms. Ramos's attorney only asked about whether the same sit and stand limitations applied to the table worker as to the vocations. *Id.* at 52.

### 4.      The ALJ's Decision

After considering the evidence, the Administrative Law Judge Jason Mastrangelo concluded that Ms. Ramos was not disabled. Tr. at 11. In the decision, the ALJ made the following eleven findings:

1. Ms. Ramos met the insured status requirements of the Social Security Act and will continue to meet the requirements until December 31, 2020, Tr. at 12;

2. Ms. Ramos had not engaged in substantially gainful activity since November 12, 2015, *Id.* (citing 20 CFR 404.1571));

3. Ms. Ramos had fibromyalgia, a spine disorder, right-knee bursitis,[4] and right medial epicondylitis,[5] which have a severe impact on Ms. Ramos's ability to perform basic work related activities but were not enough, either individually or in combination, for an impairment determination under Section 12.00 of Appendix 1, *Id.* at 12–15 (citing 20 CFR 404.1520(c));

4. Ms. Ramos does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, *Id* at 15;

5. Ms. Ramos had the residual functional capacity to perform less than the full range of light work defined by 20 CFR 404.1567(b), Ms. Ramos was limited to lifting and carrying twenty pounds occasionally and ten pounds frequently, she was restricted to standing and walking for four hours of an eight- hour workday and sitting for six

---

[4] A "process involving continuous rubbing, pressure or vibration of the parts affected." *St. Paul & Tacoma Lumber Co. v. Dep't. of Labor & Indus.*, 19 Wash. 2d 639, 645 (1943).
[5] "Medial epicondylitis, also known as golfer's elbow, . . . is characterized by pain from the elbow to the wrist on the inside (medial side) of the elbow. The pain is caused by damage to the tendons that bend the wrist toward the palm." *DiMauro v. Berryhill*, No. 3:15-cv-1485 (DJS), 2017 WL 1095024, at *2 n. 6 (D. Conn. March 23, 2017) (citation omitted).

hours in an eight-hour workday, Ms. Ramos was limited to occasional climbing of
rams and stairs, Ms. Ramos must never climb ladders, ropes, or scaffolds, Ms. Ramos
was restricted to occasional balancing, stooping, kneeling, crouching, and crawling,
and Ms. Ramos must avoid concentrated exposure to extreme cold, heights, and
hazardous machines, with the testing, examinations, treatment history, daily living
accounts, and opinion evidence all supporting this residual functional capacity
assessment, *Id.* at 16–20;

6. Ms. Ramos was unable to perform any of her past relevant work, *Id.* at 20 (citing 20
CFR 404.1556);

7. Social Security Regulations define Ms. Ramos, at age 42 as of May 12, 2017, as a
younger individual based on her alleged disability onset date, *Id.* at 21 (citing 20 CFR
404.1563);

8. Ms. Ramos had limited education and can speak English, *Id.* (citing 404.1564);

9. Transferability of job skills was not material to Ms. Ramos because the ALJ used the
Medical Vocational rules framework to support a finding that Ms. Ramos was not
disabled regardless of whether her job skills were transferrable, *Id.* (citing SSR 82-41
& 20 CFR Part 404, Subpart P, Appendix 2);

10. Based on Ms. Ramos's age, education, work experience, and residual functional
capacity there are enough jobs that exist in significant numbers in the national
economy that Ms. Ramos can perform, *Id.* at 21–22 (citing 20 CFR 404.1569 &
404.1569(a));

11. Ms. Ramos had not been under disability, within the meaning of the Social Security
Act, since November 12, 2015 throughout the date of decision, *Id.* at 22.

### 5.    Appeals Council Decision

After reviewing the ALJ's decision, the Appeals Council found no reason to change the ALJ's decision. Tr. at 1.

### B.    Procedural History

On June 26, 2018, Ms. Ramos filed a Complaint against the Acting Commissioner. Complaint, ECF No. 1.

On October 4, 2018, the Acting Commissioner filed the administrative record. Social Security Transcripts, ECF No. 14.

On December 1, 2018 Ms. Ramos moved to reverse the decision by the Acting Commissioner. Motion to Reverse the Decision of the Commissioner, ECF No. 21.

On February 11, 2018, the Acting Commissioner moved to affirm its decision. Cross Motion to Affirm the Decision of the Commissioner, ECF No. 22.

## II.    STANDARD OF REVIEW

Under the Social Security Act, "a claimant must establish an 'inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.'" *Smith v. Berryhill*, 740 F. App'x. 721, 722 (2d Cir. 2018) (summary order) (citing 20 C.F.R. § 404.1505(a)).

To determine whether a claimant is disabled, the ALJ must follow a five-step evaluation process:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the

national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v)). "[T]he claimant has the general burden of proving that he or she has a disability within the meaning of the Act, and bears the burden of proving his or her case at steps one through four," *see Burgess*, 537 F.3d at 128 (internal quotation marks and citation omitted), with Step Five "the burden shift[ing] to the Commissioner to show there is other work that [the claimant] can perform," *see Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012).

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on the correct legal standard." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (citing 42 U.S.C. § 405(g)). A district court can reverse the commissioner's decision "only if it is based upon legal error or if the factual findings are not supported by substantial evidence in the record as a whole." *Greek v. Colvin*, 802 F.3d 370, 374–75 (2d Cir. 2015).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brown v. Apfel*, 174 F.3d 59, 61 (2d Cir. 1999) (internal quotation marks omitted) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). While the standard is deferential, "[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay*, 562 F.3d at 507 (internal quotation marks and citations omitted). "[A district court] must

consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Petrie v. Astrue*, 412 F. App'x. 401, 403–04 (2d Cir. 2011) (summary order) (quoting *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)) (internal quotation marks omitted).

To determine "whether the agency's findings are supported by substantial evidence, 'the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)). When "the Commissioner's decision applies the correct legal principles and is supported by substantial evidence, that decision will be sustained." *Kumar v. Berryhill*, 3:16-cv-1196 (VLB), 2017 WL 4273093, at *4 (D. Conn. Sept. 26, 2017) (citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)).

## III.   DISCUSSION

To be eligible for disability insurance benefits, a claimant must show that he or she is "unable 'to engage in any substantial gainful activity by reason of medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (citing 42 U.S.C. § 423(d)).

Ms. Ramos raises three issues in appealing the ALJ's disability determination: (1) the ALJ failed to develop the administrative record; (2) the ALJ made an improper Step Three

conclusion on Ms. Ramos's medical history; and (3) the ALJ made an improper residual functional capacity determination at Step Five.

Accordingly, the Court will address each issue in turn.

## A.     Development of the Administrative Record

An ALJ has an "affirmative duty to compile a complete record" when ruling on eligibility. *Brown*, 174 F.3d at 63. The ALJ must "not only develop the proof but carefully weigh it." *Donato v. Sec'y. of Dep't. of Health and Human Servs.*, 721 F.2d 414, 419 (2d Cir. 1983). Accordingly, the district court conducts "a plenary review of the administrative record to determine whether, considering the record as a whole, the Commissioner's decision is supported by substantial evidence." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)).

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." *Shaw*, 221 F.3d at 131 (quoting 42 U.S.C. § 405(g)). In cases "[w]here the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the district court will not substitute its "judgment for that of the commissioner." *Veino*, 312 F.3d at 586. And the district court may not "affirm an administrative action on grounds different from those conducted by the agency." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

Ms. Ramos argues that the ALJ failed to develop the administrative record because none of her treating physicians opined about her abilities and functional capacity. Memorandum of Law in Support of Motion to Reverse the Decision of the Commissioner, ECF No. 21-2 ("Mem. of Law in Supp. of Mot. to Reverse"). Ms. Ramos also notes that the administrative record is

devoid of treatment notes from her primary care physicians, her fibromyalgia physician, her lower extremity physician, and her allergy and asthma physicians. *Id.* at 2–3.

Ms. Ramos further contends that the ALJ never sought information from her treating physicians in developing the administrative record. *Id.* at 3. In the absence of contemporaneous medical records from Ms. Ramos's primary care physicians, she argues that the record does not contain a proper function-by-function analysis. *Id.* at 10. Ms. Ramos thus asserts that the ALJ did not develop a full record and failed to fulfill his obligation under the law. *Id.* at 11.

In response, the Acting Commissioner argues that the medical evidence available to the ALJ was comprehensive and addressed each of Ms. Ramos's impairments; additional records thus would not have revealed any useful information. Mem. in Supp. of Mot. to Affirm at 4. The Acting Commissioner further asserts that any additional records from her primary care physicians would not have added any information not already available in the existing medical records, and Ms. Ramos never identified other physicians as medical sources for her relevant injuries. *Id.* at 5–6.

The Acting Commissioner also argued that nothing required the ALJ to seek medical evidence from treating sources. *Id.* at 8. The Acting Commissioner asserts that the rules do not impose a duty upon the ALJ to seek medical opinions from treating sources because rule modifications have placed less emphasis on the treatment relationship in evaluating medical evidence. *Id.* at 8–10. The Acting Commissioner thus concluded that substantial evidence supports the ALJ's conclusions, making additional opinion evidence unnecessary.

The Court agrees.

Under Social Security Regulations, the claimant bears the burden of proving that he or she is disabled throughout the period for which benefits are sought. *See* 20 C.F.R. § 404.1512(a).

"The ultimate determination of whether a person has a disability within the meaning of the Act belongs to the Commissioner." *Greek v. Colvin*, 802 F.3d 370, 374 (2d Cir. 2015) (citing *Snell v. Apfel*, 177 F.3d 128, 133–34 (2d Cir. 1999)). A reviewing court "may set aside the Commissioner's decision only if it is based upon legal error or if its factual findings are not supported by substantial evidence in the record as a whole." *Id.* at 374–75 (citing *Burgess*, 537 F.3d at 127 (2d Cir. 2008); 42 U.S.C. § 405(g)).

Even when counsel represents a claimant, an ALJ must "affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Lamay*, 562 F.3d at 508–09 (quoting *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999)). A record is fully developed when it is "detailed enough to allow the ALJ to determine the claimant's residual functional capacity." 20 C.F.R. § 404.1513(e)(1)-(3). In doing so, the ALJ must make "every reasonable effort" to obtain medical reports from a claimant's healthcare providers. 20 C.F.R. §§ 404.1512(d), 416.912(d).

Generally, "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). In the event an ALJ fails to develop a record, however, "the issue is whether the missing evidence is significant." *Santiago v. Astrue*, No. 3:10-cv-937 (CFD), 2011 WL 4460206, at *2 (D. Conn. Sept. 27, 2011) (citing *Pratts v. Chater*, 94 F.3d 34, 37–38 (2d. Cir. 1996)).

Here, there was sufficient medical records available for the ALJ to make a residual functional capacity determination. As part of the ALJ's affirmative duty to develop the administrative record, "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). As an initial matter, Ms. Ramos's counsel stated at her hearing that "I believe all

the evidence has been submitted, with the exception of a few medical records the claimant

brought in with her . . . These are very recent records from, you know, February 20th through

March 21st." Hearing Transcript, Tr. at 31.

Ms. Ramos also failed to declare Dr. Goldman Huertas, M.D., or Dr. Kathryn Rau

Leinhardt, M.D. as medical sources for the ALJ to evaluate. *See* Tr. at 31, 185–87 (listing Dr.

Robert M. McLean, M.D., Dr. Muneed Samma, M.D., and the Yale-New Haven Hospital as the

only treating sources since 2012); 209–11 (listing Dr. Farlyn Charot-Hicks, Dr. Francis Lobo,

Dr. Robert McLean, and Dr. Muneed Samma as treating physicians). Within the evaluation of

this case, the ALJ also reviewed records from several of Ms. Ramos's treating physicians,

including: her rheumatologist,[6] her sleep specialists,[7] her podiatrist,[8] and her allergist.[9]

There are cases where a court should not provide controlling weight to treating physician

opinions. *See, e.g.*, *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (holding that "the

option of treating physician is not afforded controlling weight where, as here, the treating

physician issued opinions that are not consistent with other substantial evidence in support, such

---

[6] *See* Tr. at 248–69 (identifying Dr. Robert McLean as Ms. Ramos's internal medicine physician from January 9, 2015 until January 6, 2016 and noting other encounters with Dr. Muneeb Samma, M.D. in diagnostic radiology and Edward P Monaco, M.D. in emergency medicine), 506 (identifying Dr. Muneeb, Samma, MD as Ms. Ramos's primary care physician for internal medicine, Dr. Joann M. Knudson, M.D. as Ms. Ramos's primary care physician as an OBGYN, Kathryn Rau, M.D. as a member of the patient care team, and Dr. Robert McLean, M.D. as Ms. Ramos's rheumatologist as of May 26, 2016), 510 (identifying the same patient care team as of August 2, 2018, but replacing Dr. Muneeb Samma, M.D. with Liza Huertas, M.D. as the general family medicine practitioner), 513 (identifying Dr. Knudson, Dr. Leinhardt, and Dr. McLean as the patient care team as of November 9, 2016), 517 (identifying James Seely, M.D. as primary care physician for general family services, Joann Knudson M.D. as primary care physician as an OBGYN, Kathryn Leinhardt, M.D. as a member of the patient care team, Robert McLean, M.D. as the rheumatologist, and Liza Goldman Huertas M.D. as family medicine as of February 20, 2017).
[7] *See* Tr. at 590–93 (identifying Dr. Jason Catanzo and Dr. Herbert Knight as Ms. Ramos's sleep apnea treating physicians from September 20, 2016 until December 21, 2016).
[8] *See* Tr. at 209 (identifying Dr. Farlyn Charlot-Hicks as the treating physician for Ms. Ramos's heel spurs), 385–88(same for the period on March 29, 2016 and April 26, 2016), 480–91(same for September 20, 2016 treatment date).
[9] *See* Tr. at 210 (identifying Francis Lobo as Ms. Ramos's allergist), 523–31 (Ms. Ramos's allergy treatment notes from April 6, 2016 until September 20, 2016), 585–87 (detailing April 6, 2016 and May 31, 2016 allergy treatment notes). Even then, the treating sources cited by Ms. Ramos did not treat her alleged disabling ailments. *See* Tr. at 186, 211 (identifying Dr. Muneeb Samma, M.D. as Ms. Ramos's primary care physician); Tr. 378 (Dr. Samma identifying Ms. Ramos as having "a history of allergic rhinitis, mite allergy, and seasonal allergies").

as the opinions of other medical experts"). That is the case here.

Although the record does not contain formal opinions on Ms. Ramos's residual functional capacity from her treating physicians, the breadth and depth of medical records available from both before and during the alleged disabling period were adequate for the ALJ to assess residual functional capacity. *See Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (summary order) ("Given the specific facts of this case, including a voluminous medical record assembled by the claimant's counsel that was adequate to permit an informed finding by the ALJ, we hold that it would be inappropriate to remand solely on the ground that the ALJ failed to request medical opinions in assessing residual functional capacity."). Indeed, most of the records here are medical opinions that range throughout Ms. Ramos's period of alleged disability.

Given the extensive medical history available to the ALJ and the evaluation of all medical opinions from treating and consulting physicians, then deemed relevant even by Ms. Ramos's counsel, the substantial evidence supports the ALJ's development of the administrative record. *Shaw*, 221 F.3d at 131 ("On appeal, we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied.").

B.      **ALJ's Step Three Evaluation**

For a Step Three analysis, the ALJ must determine "based solely on medical evidence, the claimant has had an impairment which is listed in Appendix 1 of the regulations." *Nelson v. Berryhill*, No. 16-cv-02052 (VLB), slip op. at *5 (D. Conn. Mar. 1, 2018) (citing *Rosa*, 168 F.3d at 77). If the claimant's impairment or combination of impairments reach the threshold criteria of 20 C.F.R. § 404.1409 and the duration requirement of 20 C.F.R. § 416.909, the claimant is considered disabled.

Ms. Ramos argues that the ALJ made no attempt to ascertain whether her conditions—whether individually or in combination—were equal to the severity of listed Social Security impairments. Mem. of Law in Supp. of Mot. to Reverse at 13. Moreover, Ms. Ramos argues that the ALJ did not evaluate Ms. Ramos's fibromyalgia at all, let alone in concert with her other documented impairments. *Id.* at 13–14. Ms. Ramos asserts that throughout her medical record, there is a consistent showing of severe pain, which the ALJ discounted, but no physician questioned the severity of her pain. *Id.* at 15. Because the ALJ did not take Ms. Ramos's pain into account in a meaningful manner, in her view, the ALJ erred in making credibility and disability determinations. *Id.* at 15–17.

In response, the Acting Commissioner argues that substantial evidence supports the ALJ's findings that Ms. Ramos met none of the Social Security listings, regardless of whether the ALJ considered the specific Step Three listings. Mem. of Law in Supp. of Mot. to Affirm at 11. Even then, the Acting Commissioner argues that other credible evidence supports its conclusion. *Id.* At the same time, the Acting Commissioner alleges that Ms. Ramos never states which Listing she believes that her impairments meet or equal, nor did she present evidence that would allow the ALJ to make such a conclusion. *Id.* at 11–12.

The Acting Commissioner next argues that the ALJ properly evaluated Ms. Ramos's fibromyalgia diagnosis by considering her subjective pain reports and balancing that with objective medical evidence. *Id.* at 13–14. When the subjective and objective factors are considered, the Acting Commissioner argues that the ALJ's determination that Ms. Ramos's pain assessments were not consistent with the overall record. *Id.* at 14.

The Court agrees.

According to Social Security regulations, "the third inquiry is whether, based solely on

medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations." *Talavera*, 697 F.3d at 151. "The claimant has the general burden of proving that he or she has a disability within the meaning of the Act," *see Burgess*, 537 F.3d at 128, and "bears the burden of proving his or he case at steps one through four" of the five-step framework established by the social security regulations. *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004). An ALJ's decision will be affirmed, so long as "the evidence of record permits us to glean the rationale of an ALJ's decision." *Mongeur*, 722 F.2d at 1040; *Chichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013).

Here, Ms. Ramos argues that the ALJ improperly accounted her physical impairments in his analysis of the social security regulations. To find physical disability, Social Security regulations require:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With: A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b . . .

20 C.F.R. § 404, Subpart P, App'x 1, § 1.02.

The available medical record, however, does not support a major dysfunction finding. It is undisputed that Ms. Ramos suffers from osteoarthritis in both ankles, heal spurs, fibromyalgia, migraines, herniated/bulging disk in back, fatigue, and anxiety. *See* Disability Report, Tr. at 181. At the same time, the Acting Commissioner twice denied Ms. Ramos disability benefits. *See* Tr. at 67, 70–82. Specifically, her medical evaluations did not support the sort of chronic pain and disfunction required by the Social Security Regulations.

Throughout Ms. Ramos's medical history, there is no finding of a major disfunction. For example, during a January 4, 2016 medical examination, Dr. Robert McLean indicated that Ms. Ramos was "oriented to person, place, and time," had a "[n]ormal range of motion" in both her neck and musculoskeletal tests. Tr. at 250. These diagnostic conclusions were consistent throughout the entirety of Ms. Ramos's office treatment records, emergency department records, and internal consultative examination records, regardless of the timing of the examination, the physician, or the circumstances of her visit. *See* Tr. at 247–459; *see, e.g.*, Tr. at 254 (October 17, 2015 evaluation by Dr. Robert McLean, M.D. determining that Ms. Ramos had "[n]o inflammatory synovitis or synovial thickening, nl ROM, no effusions; no muscular weakness or tenderness; right elbow focally tender with palp over medial epicondyle but no synovitis, right knee cool with slight tenderness"); Tr. at 507 (stating the same during May 26, 2016 examination); Tr. at 510 (stating the same during an August 2, 2016 examination); Tr. at 513 (stating the same during a November 9, 2016 examination); Tr. at 517 (stating the same during a February 2, 2017 examination); Tr. at 250 (January 2, 2016 evaluation by Dr. Arjun Kirshna, M.D. determining that Ms. Ramos had "[n]ormal range of motion. She exhibits no edema or tenderness"); Tr. at 387 (March 29, 2016 evaluation by Dr. Farlyn Charlot-Hicks where an "[o]rthopedic exam reveals normal metatarsal phalangeal joint, ankle, and subtalar joint"); Tr. at 386 (Stating the same during an April 29, 2016); Tr. at 488 (stating the same during a June 21, 2016 examination); Tr. at 486 (stating the same during an August 9, 2016 examination); Tr. at 480 (stating the same during a September 20, 2016 examination).

Based on the record evidence, the ALJ's Step Three conclusions that there was no major dysfunctional finding, as required by the Social Security Regulations, was reasonable.

### C. ALJ's Step Five Conclusion

After a claimant has proved that his or her residual functional capacity precludes a return to past relevant work, Step Five shifts the burden to the Acting Commissioner "to show there is other work that [the claimant] can perform." *Brault v*, 683 F.3d at 445. The ALJ may meet its burden "either by applying the Medical Vocational Guidelines or by adducing testimony of a vocational expert." *McIntyre*, 758 F.3d at 151.

"An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as the facts of the hypothetical are based on substantial evidence, and accurately reflect the limitations and capabilities of the claimant involved." *Calabrese v. Astrue*, 358 F. App'x. 724, 276 (2d Cir. 2009) (summary order) (internal citations omitted). To meet the burden of Step Five under the Social Security regulations, "[t]he Commissioner need show only one job existing in the national economy that [Claimant] can perform." *Bavaro v. Astrue*, 413 F. App'x. 382, 384 (2d Cir. 2011) (summary order) (citing 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566(b)).

Ms. Ramos argues that the vocational expert's testimony did not include source support for his job incidence estimates. Mem. of Law in Supp. of Mot. to Reverse at 18. Ms. Ramos then argues that the ALJ's hypothetical questions, and the vocational expert's responses, were both defective. *Id.* at 20. Because of these flawed questions, at least in her view, any response does not serve as substantial evidence to support the Acting Commissioner's decision. *Id.* at 22.

In response, the Acting Commissioner argues that the vocational expert grounded his testimony in his professional experience and clinical judgment, which is sufficient to base the job incidence statements made at the hearing. Mem. of Law in Supp. of Mot. to Affirm at 15–17. Ms. Ramos failed to cross-examine the vocational expert regarding the vocational expert responses and, in the Acting Commissioner's view, the ALJ therefore had no duty to inquire

further. *Id.* at 17. Because no regulation or case law imposes a duty on the vocational expert to state their sources or the ALJ to ask for job incidence sources, the Acting Commissioner argues that the Step Five analysis was proper. *Id.* at 18–19. Accordingly, the Acting Commissioner asserts that the ALJ rested upon substantial evidence of medical examinations, Ms. Ramos's account of her daily activities, and the vocational expert's findings in determining that Ms. Ramos could perform jobs within the national economy. *Id.* at 18 –22.

The Court agrees.

When evaluating a disability determination, "[t]he Commissioner has the burden in Step Five of the disability determination to prove that the claimant is capable of working." *Bavaro*, 413 F. App'x. at 384. At Step Five, the ALJ must determine whether the claimant can do "other work existing in significant numbers in the national economy" based on the claimant's residual functional capacity. *Greek*, 802 F.3d 373 n.2 (citing 20 C.F.R. §§ 404.1520(g), 404.1560(b)). Sufficient "[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [the claimant is] able to meet with [her] physical or mental abilities and vocational qualifications." 20 C.F.R. § 416.966 (b).

In its evaluation "[a]n ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial evidence to support the assumptions upon which the vocational expert based his opinion and accurately reflect the limitations and capabilities of the claimant involved." *See McIntyre*, 758 F.3d at 151 (internal citations and quotation marks omitted). The Acting Commissioner cannot meet its burden when there are only "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where" the claimant lives. 20 C.F.R. § 416.966 (b).

"[F]or the testimony of a vocational expert to be considered reliable, the hypothetical

posed must include all of the claimant's functional limitations, both physical and mental supported by the record." *Harbock v. Barnhart*, 210 F. Supp. 2d 125, 134 (D. Conn. 2002) (Goettel, J.) (citation omitted). And "an ALJ's hypothetical should explicitly incorporate any limitations in concentration, persistence, and pace." *McIntyre*, 758 F.3d at 152. When "the ALJ asks the vocational expert a hypothetical question that fails to include or otherwise implicitly account for all of the claimant's impairments, then the vocational expert's testimony is not substantial evidence and cannot support the ALJ's conclusion that the claimant can perform significant numbers of jobs in the national economy." *Hernandez v. Berryhill*, No. 3:17-cv-368 (SRU), 2018 WL 1532609, at *18 (D. Conn. 2018) (internal quotation marks and citation omitted).

Here, there is nothing to rebut the Acting Commissioner's residual functional capacity assessment and the close nexus between that assessment and the ALJ's vocational hypothetical support the ALJ's findings. Courts "have generally held that what constitutes a 'significant' number is fairly minimal." *Fox v. Comm'r of Soc. Sec.*, Civ. No. 6:02–CV–1160 (FJS/RFT), 2009 WL 367628, at *20 (N.D.N.Y. Feb. 13, 2009); *see also Cohen v. Comm'r of Soc. Sec.*, 643 F. App'x 51, 53–54 (2d Cir. 2016); *see also Dumas v. Schweiker*, 712 F.2d 1545, 1553–54 (2d Cir. 1983) (noting that "that the factual findings of the Secretary, if supported by substantial evidence, shall be conclusive.") (citing 42 U.S.C. §§ 405(g), 1383(c)(3)).

In this case, Dr. Robert Weisberg conducted a residual functional capacity assessment, concluding that Ms. Ramos could occasionally carry twenty pounds, frequently carry ten pounds, stand or walk for four hours of an eight-hour workday with normal breaks, sit for six hours within an eight-hour workday, and had no limit on operating hand and foot controls. Residual Capacity Assessment, Tr. at 78. Based on this assessment, the ALJ asked Mr. Takki, the

vocational expert, whether someone with Ms. Ramos's medical profile could perform her past work as a bus driver, which she could not do. *See* Tr. at 47–48. Mr. Takki, however, testified that someone with Ms. Ramos's limitations would be able to as a price marker, an electronics sub-assembler, and a table worker. *Id.* at 48–49.

Based on the state's physical residual functional capacity assessment and the close nexus between that assessment and the ALJ's hypotheticals, the Court finds that the ALJ's Step Five conclusions were proper.

## IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** the motion to reverse the Acting Commissioner's decision and **GRANTS** the motion to affirm the Acting Commissioner's decision.

**SO ORDERED** at Bridgeport, Connecticut, this 5th day of August 2019.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE